IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RICO GILLIAM, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 20-00091-CV-W-BP |
| ) | Crim. No. 15-00354-CR-W-BP |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER AND OPINION (1) DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, (2) DENYING MOTION FOR TRIAL TRANSCRIPTS, AND (3) DENYING A CERTIFICATE OF APPEALABILITY**

Pending is Movant Rico Gilliam's Motion to Vacate, Set Aside or Correct Sentence, (Doc. 1), which seeks relief pursuant to 28 U.S.C. § 2255. For the following reasons, the Motion is **DENIED**, and the Court declines to grant a Certificate of Appealability.[1]

## I. BACKGROUND

The Court will summarize the facts and the procedural history but will not set forth all the evidence introduced at trial. Additional facts will be set forth in the context of some of Movant's claims.

Movant was convicted on two counts of being a felon in possession of a firearm. The two counts were based on Defendant's possession of the same firearm on two distinct occasions (with a break of non-possession between them). The first occasion was on October 17, 2014, at a home owned by Harding "Pops" Jeffrey. Jeffrey lived there with his girlfriend, Carla Offield. Another couple, Joe Scrivo and his girlfriend, Nicole Devriendt, also lived in Jeffrey's house. On the night

---

[1] Movant has also filed a Motion for Trial Transcripts. This motion, (Doc. 45), is denied for the same reason that his prior motion was denied. (*See* Doc. 44 (denying motion for transcripts for the reasons set forth in the Government's response, referring to Doc. 43, pp. 1-3).)

of October 16 or the early morning of October 17, Scrivo became violently angry and eventually left the house. Fearing that Scrivo would return and still be angry (and violent), Jeffrey or Offield (or both) contacted Movant and asked him to come to Jeffrey's house, which he did. Later, Scrivo returned and began arguing with Movant. Movant pulled a gun (a .40 caliber Glock) out of his waistband or pocket and shot at Scrivo three times, hitting him once. Scrivo left, and Devriendt went with him. Movant left later, after either giving the gun to Jeffrey or simply leaving it in Jeffrey's house.

Scrivo and Devriendt made a police report later on October 17, and a warrant was issued for Movant's arrest. On November 6, a confidential informant related to Detective Brandon Bray, a detective with the Kansas City, Missouri Police Department, that Movant was staying at an apartment that was rented by Donna Bailey. Detective Bray went to Bailey's apartment and asked her if Bailey was inside; she stated that he was. And, because she also indicated that Movant had a gun, Detective Bray summoned a tactical squad and had Bailey, the other occupants of her apartment, and the occupants of the downstairs apartment exit the building. He then called for Movant to come out. Movant initially did not comply but eventually he did; when he emerged, he had insulation or drywall dust on his head and shoulders.

Bailey gave the police permission to search her apartment. The search of a back bedroom revealed a closet with access to the attic; next to the access point was a hole in the ceiling where it appeared someone may have fallen through. The police searched the attic and found the same handgun Movant had used to shoot Scrivo. Bailey testified that the hole in the ceiling had not been present previously.

2

Movant was originally charged in state court. While in custody he had conversations with April Calvillo, during which he asked her to write a letter stating that she placed the gun in the attic. Recordings of this conversation and the letter that Calvillo wrote were introduced at trial.

Evidence about fingerprints and DNA was also introduced during the trial. The handgun's slide and the trigger each contained a mixture of DNA from multiple people, but no profiles could be isolated and developed. (Crim. Doc. 79, p. 96 (Trial Tr., p. 170).)[2] The magazine also had a mixture of DNA but one profile could be developed; however, that profile did not correspond to Movant. (*Id*.) Testimony also established that the lack of DNA did not mean that a person did not handle the firearm (and, of course, Movant could have contributed one of the DNA profiles that could not be developed). A fingerprint examiner testified that no usable fingerprints could be found on the gun or the ammunition. (Crim. Doc. 79, pp. 109-10 (Trial Tr., pp. 183-84).) Finally, testimony about Movant's statements admitting that he shot Scrivo were introduced at trial.

The jury found Movant guilty on both counts of being a felon in possession of a firearm, and he was sentenced to two consecutive 90 month terms of imprisonment. Movant appealed, and the Eighth Circuit affirmed both the convictions and the sentence. *United States v. Gilliam*, 934 F.3d 854 (8th Cir. 2019).

## II. DISCUSSION

Movant filed a motion for postconviction relief pursuant to 28 U.S.C. § 2255 based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (Doc. 1.) He was later granted permission to file a Supplemental Motion, which added claims of prosecutorial

---

[2] "Crim. Doc. __" is a reference to a document filed in the criminal case. "Doc. __" is a reference to a document filed in this case. Unless otherwise indicated all page numbers are those generated by the Court's CM/ECF system.

misconduct and ineffective assistance of counsel. (Doc. 28.) The Court has considered Movant's arguments and finds they all lack merit.[3]

## A. *Rehaif v. United States*

At the time of Movant's trial (in November 2017), precedent established that a defendant's knowledge that he was a felon was not an element of the crime of being a felon in possession of a firearm. The Court instructed the jury consistently with this precedent and did not require the jury to find that Defendant knew that he was a felon. (Crim. Doc. 63, pp. 21-22 (Jury Instructions 16-17).) In June 2019, the Supreme Court overruled this precedent and held "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Movant contends that this instructional error entitles him to postconviction relief.

Movant did not raise this at trial or on appeal, so he has procedurally defaulted the claim and can proceed only if he "can demonstrate either cause and actual prejudice, or actual innocence." *Clay v. United States*, 833 Fed. App'x 663, 663 (8th Cir. 2021). In making this determination the Court may consider the fact that Movant admitted or stipulated to the fact that he was a felon as well as information in the presentence investigation report, ("the PSR"). *Greer v. United States*, 141 S. Ct. 2090, 2098-99 (2021).[4] Here, the PSR reflects that Movant was previously convicted of (among other crimes): (1) unlawful use of a weapon, for which he was sentenced to four years imprisonment, (2) burglary, two counts of armed criminal action, and

---

[3] The Court has determined that a hearing is not necessary to resolve the issues Movant has raised. A movant "is entitled to an evidentiary hearing unless the motion and the files and the records of the case conclusively show that he is entitled to no relief." *Witthar v. United States,* 793 F.3d 920, 922 (8th Cir. 2015) (cleaned up); *see also Anjulo-Lopez v. United States,* 541 F.3d 814, 817 (8th Cir. 2008). All of Movant's claims for relief can be resolved based on the Record and the law; none of his claims depend on disputed issues of fact.

[4] *Greer* involved an examination for plain error and did not involve a request for postconviction relief, but there is no reason to believe that the analysis would be different.

4

attempted first degree robbery, for which he was sentenced to concurrent sentences of ten, three, ten, and three years, and (3) second degree robbery and armed criminal action, for which he was sentenced to concurrent sentences of ten and three years. (Crim. Doc. 69, ¶¶ 81-82, 84.) And, Movant spent more than a year in custody in all three of these instances. Given these facts (and the fact that Movant does not explain any basis upon which a jury could conclude that he did not know he was a felon when he possessed the firearm), Movant cannot demonstrate prejudice from the failure to instruct the jury that he had to know he was a felon, nor can he show that he is actually innocent of the crime of being a felon in possession of a firearm. Therefore, *Rehaif* does not entitle him to postconviction relief.

### B.  Prosecutorial Misconduct and Ineffective Assistance of Counsel

Movant presents several arguments under the heading of prosecutorial misconduct and ineffective assistance of counsel, some of which are intertwined. He contends that the Government failed to disclose evidence that could have been used to impeach witnesses or to exculpate him, and that his attorney provided ineffective assistance for failing to discover such evidence. He also contends that the prosecutor introduced prejudicial and inflammatory evidence and that his attorney was ineffective for failing to object. Finally, he contends that his attorney was ineffective for failing to present a defense.

The Court begins by discussing the standard for ineffective assistance of counsel. Such claims are evaluated under the standards set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), which requires the movant to "show that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice)." *Hamberg v. United States,* 675 F.3d 1170, 1172 (8th Cir. 2012)

5

(quotation omitted). With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of professional assistance," *Charboneau v. United States,* 702 F.3d 1132, 1136 (8th Cir. 2013) (quotation omitted), so the Court's scrutiny of counsel's performance must be deferential. *E.g., Hamberg,* 675 F.3d at 1172. The prejudice prong's requirement of a "reasonable probability" of a different outcome means there must be a "substantial, not just conceivable, likelihood of a different result. *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011). "A court need not address both prongs of the *Strickland* test if the petitioner cannot meet one of them." *Garcia v. United States,* 679 F.3d 1013, 1014 (8th Cir. 2012).[5]

### 1. Withholding of Evidence/Failure to Investigate

Movant contends that the Government failed to turn over evidence that could have proved his innocence or impeached witnesses in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). "Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016). Movant's claim is rejected because either (1) the evidence was provided to Movant's attorney or (2) Movant has not identified the evidence that he believes should have been provided to him and his attorney.

Movant contends that there were "contradictory statements regarding the identity of the perpetrator and person in possession of the firearm in question," (Doc. 28, p. 2), but he does not identify any such statements. He identifies no witness who saw someone else shoot Scrivo (and it

---

[5] The Court acknowledges that a § 2255 motion is not a substitute for a direct appeal, *e.g., Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995), and that a postconviction proceeding cannot be used to raise claims that should have been decided on direct appeal unless the movant can demonstrate that appellate counsel was ineffective for failing to raise the claim. *E.g., Jennings v. United States*, 696 F.3d 759, 762 (8th Cir. 2012). Given the relationship between Movant's claims of ineffective assistance of counsel, the Court will address the merits of claims that could have been (but were not) objected to or raised on appeal to evaluate whether there was prejudice or deficient performance under *Strickland*.

6

must be remembered that Movant admitted to shooting Scrivo). He also identifies no witness who connected someone else to the gun in the attic; to the extent that he is referring to Calvillo's letter taking responsibility for putting the gun in the attic, that information was clearly disclosed by the Government.[6] Accordingly, Movant has not stated any basis for his claim that the Government failed to divulge exculpatory or impeaching information, nor can he demonstrate prejudice from his attorney's failure to find such information.

Movant also contends that the Government failed to provide fingerprint evidence from the firearm, and that his attorney similarly failed to discover that there was another person's fingerprint on the gun. (Doc. 28, pp. 2, 4.) To the contrary: the Government introduced evidence that no fingerprints were found on the gun. To the extent that Movant contends his attorney should have hired an independent expert, he presents no indication that another person's fingerprint would have been found. Moreover, even if another person's fingerprint had been found, it would not have precluded the possibility that Movant possessed the firearm. Finally, and perhaps most importantly, fingerprint analysis was not necessary to establish that other people handled the gun because the DNA analysis already established this fact. For these reasons, the Court concludes that the failure to hire an independent fingerprint expert violated neither of the *Strickland* prongs.

### 2. *Improper Evidence*

Movant contends the prosecutor acted improperly by referring to his "uncharged alleged criminal conduct" and his attorney was ineffective for failing to object. Movant does not specify the uncharged conduct he is referring to. If he is referring to the shooting of Scrivo, this evidence was not improper because evidence that Movant shot the gun serves to prove that Movant

---

[6] The Court notes that the Government pointed out Movant's failure to identify either the witness or the alleged "real perpetrator" when it filed its response in March 2021, (Doc. 34, pp. 11-12). Thereafter Movant was granted three extensions of time to file a Reply in support of his Motion, (Doc. 38; Doc. 40; Doc. 44), but he never did.

possessed the gun. Any objection to the reference to Movant shooting the gun would have been overruled. If he is referring to his communications with Calvillo, this evidence was also relevant to prove Movant's intent and consciousness of guilt; any objection would have been overruled. There is neither deficient performance nor prejudice, so *Strickland*'s requirements are not satisfied.

### 3. Failure to Present a Defense

This argument is really a culmination of Movant's other arguments: he contends that his attorney should have subpoenaed exculpatory witnesses, hired an independent fingerprint expert, and moved to suppress evidence. But as discussed earlier, Movant identifies no exculpatory witnesses and provides no basis for believing that a different fingerprint expert would have found a fingerprint. And as also discussed earlier, the jury already knew that someone else's DNA was found on the gun, so a fingerprint expert's confirmation that someone else touched the gun would not have altered the outcome. Finally, Movant presents no basis for suppressing the firearm or ammunition. The firearm was found in Bailey's apartment, and she granted consent for the police to search. The ammunition and shell casings were found in Bailey's apartment and Jeffrey's house. Counsel was not ineffective for failing to file a motion to suppress. Finally, Movant argues that his attorney was ineffective for failing to raise the *Rehaif* issue. However, for the reasons stated in Part II.A, Movant cannot satisfy *Strickland*'s prejudice prong.

### III. CERTIFICATE OF APPEALABILITY

In order to appeal Movant must obtain a Certificate of Appealability, which should be issued only if he "has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is established if reasonable jurists could disagree as to how the issue should be resolved. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). The Court does not believe

that the issues Movant has raised are subject to debate among reasonable jurists, so the Court declines to issue a Certificate of Appealability.

## IV.  CONCLUSION

The Motion for Postconviction Relief is **DENIED** and the Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED.**

DATE: August 19, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT